## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**PROJECT CONSULTING SERVICES, INC.**                    **CIVIL ACTION**

**VERSUS**                                                              **NO. 20-1441**

**EMPLOYERS INSURANCE COMPANY OF**                    **SECTION: "G"(5)**
**WAUSAU**

<u>**ORDER AND REASONS**</u>

In this litigation, Plaintiff Project Consulting Services, Inc. ("PCS") seeks a declaratory judgment that its insurer, Defendant Employers Insurance Company of Wausau ("Wausau"), is obligated to defend PCS for claims asserted by non-party Starr Surplus Lines Insurance Company ("Starr") in litigation ongoing in the 165th Judicial District Court of Harris County, Texas (the "Starr Suit").[1] Pending before the Court are cross-motions for summary judgment.[2] The parties seek summary judgment on the sole issue of whether Wausau has a duty to defend PCS against the Starr Suit.[3]

Having considered the motions, the memoranda in support and opposition, the record, and the applicable law, the Court grants Wausau's motion for summary judgment and enters declaratory judgment that the Policy's professional services exclusion relieves Wausau of the duty to defend PCS against the Starr Suit.

---

[1] Rec. Doc. 1 at 2.

[2] Rec. Docs. 18, 32.

[3] *See* Rec. Doc. 18 at 1; Rec. Doc. 32 at 1.

1

# I. Background

## A.    *Factual Background*

In connection with its motion for summary judgment, the parties provide the following uncontested material facts.[4] PCS, a pipeline services firm, was hired by non-party Spectra Energy Services, LLC ("Spectra") to work on a pipeline construction project in Texas.[5] PCS's agreement with Spectra tasked PCS with, among other things, "overseeing the pipeline project's . . . construction."[6]

Wausau issued a general liability policy (the "Policy") to PCS which covered the period from May 1, 2017 to May 1, 2018.[7] The Policy provided that Wausau will "pay those sums that [PCS] becomes legally obligated to pay as damages because of . . . 'property damage'" and Wausau "will have the right and duty to defend [PCS] against any 'suit' seeking those damages."[8]

## B.    *Policy Exclusions*

The Policy contained three relevant coverage exclusions. First, under the Policy's "professional liability exclusion" property damage "arising out of the rendering of or failure to render any professional services" was excluded from coverage when PCS was:

a. [p]roviding engineering, architectural or surveying services to others in your capacity as an engineer, architect or surveyor; and

b. [p]roviding . . . engineering, architectural or surveying services in connection

---

[4] Rec. Docs. 18-2, 32-3.

[5] Rec. Doc. 18-2 at 1; Rec. Doc. 32-3 at 1–2.

[6] Rec. Doc. 18-2 at 2; *see also* Rec. Doc. 32-3 at 2.

[7] Rec. Doc. 18-2 at 6; Rec. Doc. 32-3 at 2.

[8] Rec. Doc. 18-2 at 6; Rec. Doc. 32-3 at 2.

with construction work you perform.[9]

Professional services are defined under this exclusion as:

> a. Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders, or drawings and specifications; and

> b. Supervisory or inspection activities performed as part of any related architectural or engineering activities.[10]

However, professional services "do not include services . . . in [the insured's] capacity as a construction contractor."[11]

Next, the Policy contains two "work product" exclusions. The "real property" exclusion excludes coverage for property damage on the "part of any real property on which [the insured] . . . [is] performing operations, if the 'property damage' arises out of those operations."[12] The "your work" exclusion, applies to property damage on the "part of any property that must be restored, repaired or replaced because 'your work' was incorrectly performed on it."[13] "Your work" is defined as work performed by the insured, including "providing of or failure to provide warnings or instructions."[14]

---

[9] Rec. Doc. 18-3 at 80, 94 (the Policy).

[10] *Id.* at 80.

[11] *Id.*

[12] *Id.* at 21–22.

[13] *Id.* at 22.

[14] *Id.* at 33.

### C.     *Procedural Background*

#### 1.     **Underlying Lawsuit: the Starr Suit**

In December 2017, the pipeline moved during a storm and allegedly suffered "substantial damage."[15] After the December 2017 storm, Spectra's insurer, Starr, paid for the damages to the pipeline.[16] Starr then "brought a subrogation suit in Texas state court against PCS alleging that PCS's acts and omissions caused and contributed to the pipeline's movement."[17] In that case, Starr asserts two claims against PCS—one for breach of contract and one for negligence.[18] The Starr Suit alleges that PCS was "to provide oversight into the design and construction" of the pipeline project and "assumed a duty to promptly report . . . any defects in the work of others."[19] Starr asserts that, in failing "to perform a proper consulting review of the design and construction features of the project . . . PCS failed to apply appropriate and applicable standards . . . which would have prevented the [pipeline's] movement and damage."[20]

PCS tendered the defense of the Starr Suit to its general liability insurer, Wausau.[21] "Wausau advised PCS that it did not believe the Wausau general liability policy provided coverage" for the Starr Suit.[22] "Ultimately, PCS and Wausau agreed that Wausau would pay for

---

[15] Rec. Doc. 18-2 at 10; *see also* Rec. Doc. 32-3 at 4.

[16] Rec. Doc. 18-2 at 10; Rec. Doc. 32-3 at 3.

[17] Rec. Doc. 18-2 at 10; Rec. Doc. 32-3 at 3.

[18] Rec. Doc. 18-2 at 3; Rec. Doc. 32-3 at 3–4.

[19] Rec. Doc. 18-2 at 3; *see also* Rec. Doc. 1-2 at 6–7 (Starr Suit); Rec. Doc. 32-3 at 4.

[20] Rec. Doc. 18-2 at 3; *see also* Rec. Doc. 1-2 at 7 (Starr Suit); Rec. Doc. 32-3 at 4.

[21] Rec. Doc. 18-2 at 5; Rec. Doc. 32-3 at 5.

[22] Rec. Doc. 18-2 at 5; *see also* Rec. Doc. 32-3 at 5.

PCS's defense against the Starr [Suit] . . . while Wausau's duty to defend was decided on cross-motions for summary judgment in this declaratory judgment action."[23]

### 2.  The Litigation Pending Before This Court

On April 6, 2020, PCS filed a petition in the 24th Judicial District Court for the Parish of Jefferson, State of Louisiana, seeking declaratory judgment that Wausau is obligated to provide a defense for PCS in the Starr Suit.[24]  Wausau removed the case to this Court on May 13, 2020.[25] The parties agree that the "sole claim" presented in this case is whether Wausau owes a duty to defend PCS in the Starr Suit.[26]  Cross motions for summary judgment are currently pending before the Court.[27]  Given that the cross-motions raise the same arguments, the Court analyzes them as one.

## II. Parties' Arguments

### A.  Wausau's Arguments in Support of Summary Judgment

As an initial matter, Wausau asserts that there "does not appear to be a conflict between Louisiana and Texas law on the narrow issues presented on summary judgment" because both states apply the eight-corners rule to determine the duty to defend.[28]  On the merits, Wausau's main argument is that the Starr Suit presents a professional liability claim which is excluded from

---

[23] Rec. Doc. 18-2 at 5–6; *see also* Rec. Doc. 32-3 at 5.

[24] Rec. Doc. 1-1 at 6.

[25] Rec. Doc. 1.

[26] Rec. Doc. 18 at 1.

[27] Rec. Doc. 18; Rec. Doc. 32.

[28] Rec. Doc. 18-3 at 4.

coverage under the Policy's professional services exclusion.[29]  In particular, Wausau contends that the Policy excludes property damage arising out of PCS's professional services "where PCS is either (1) providing engineering services to others in its capacity as an engineer or (2) providing engineering services in connection with construction work it performs."[30]  According to Wausau, "[t]hat is precisely what the Starr [Suit] alleges."[31]  Moreover, Wausau argues that the "arising out of" language in the professional services exclusion requires only that "the damage claimed against the insured would not have occurred 'but for' the excluded conduct."[32]  Wausau asserts that, here, the Starr Suit "alleges that the damage to the pipeline would not have occurred but for PCS's professional services."[33]

Wausau asserts that PCS was not hired as a construction contractor and thus cannot take refuge under the "construction contractor" exception to the professional services definition.[34]  Instead, Wausau notes that the claims in the Starr Suit "arise out of PCS's provision of engineering services in its capacity as an engineer."[35]  Wausau avers that, as Spectra's "Owner's Engineer," PCS was hired "to provide *oversight* into the design and construction" of the pipeline, and thus the contractor exception does not apply.[36]

---

[29] *Id.* at 2.

[30] *Id.* at 13.

[31] *Id.*

[32] *Id.* at 18–19 (citing *Looney Ricks Kiss Architects, Inc. v. State Farm Fire & Cas. Co.*, 677 F.3d 250, 257 (5th Cir. 2012); *Edwards v. Cont'l Cas. Co.*, 841 F.3d 360, 364 (5th Cir. 2016)).

[33] *Id.* at 19.

[34] *Id.* at 17.

[35] *Id.* at 15.

[36] *Id.* at 17–18 (emphasis in original).

In the alternative, Wausau argues the Starr Suit is excluded under the other provisions of the Policy. Wausau asserts that, to the extent the Starr Suit presents a non-professional liability claim, that is also excluded under the Policy's work product exclusions "because such liability would be for damages to PCS's own work product—damage to the pipeline itself and not other property."[37]

## B.   *PCS's Arguments in Support of Summary Judgment*

As to the choice of law, PCS "agree[s] that there is no conflict between Louisiana and Texas law on the narrow issues presented on summary judgment."[38]  Turning to the merits, PCS's primary argument that it is entitled to summary judgment is that professional liability exclusions do not preclude a duty to defend where a complaint "alleges both negligent professional services and negligent services of some other nature."[39]  PCS avers that it offers a "battery of services" that include both professional and non-professional services. [40]  According to PCS, the Starr Suit "alleges acts and omissions of both a professional and non-professional nature."[41]  Therefore, PCS asserts Wausau is bound to furnish a defense.[42]

More specifically, PCS asserts that it was retained to "provide project management support and construction management support services" in connection with the pipeline project. [43]

---

[37] *Id.*

[38] Rec. Doc. 30 at 8.

[39] *Id.* at 2 (quoting *Gore Design Completions, Ltd. v. Hartford Fire Ins. Co.*, 538 F.3d 365, 372 (5th Cir. 2008)).

[40] *Id.* at 3.

[41] *Id.* at 2.

[42] *Id.*

[43] *Id.* at 3.

However, PCS notes that the Starr Suit specifies that non-party Universal Ensco, Inc., predecessor in interest to Universal Pegasus International Inc. ("Pegasus"), was hired to engineer and design the pipeline.[44] PCS asserts the Starr Suit claims that Pegasus, not PCS, "fail[ed] to comply with applicable standards in designing a pipeline system and in particular the anchoring mechanism to secure the pipeline safely to the floor of the Gulf of Mexico during construction."[45]

In determining whether the allegations in a complaint fall under an insurance coverage exclusion, PCS contends that insurance policies should be "construed liberally in favor of the insured and strictly against the insurer."[46] PCS asserts that the allegations in the Starr Suit are not unambiguously excluded from coverage.[47] According to PCS, the Starr Suit does not specify whether PCS's oversight activities included professional or non-professional services. [48] Additionally, the Starr Suit alleges that PCS "improperly managed the construction 'means and methods'" which is not excluded under the plain language of the professional liability exclusion.[49] PCS alleges that the Starr Suit presents "allegations of breaches of PCS's general duty of reasonable care," which PCS argues do not fall under the professional liability exclusion. [50] Therefore, PCS argues that the Starr Suit "contains one or more allegations under which coverage

---

[44] *Id.* at 4.

[45] *Id.* at 5 (alteration in original) (quoting Rec. Doc. 18-5 at 8).

[46] *Id.* at 11 (quoting *Ramsay v. Md. Am. Gen. Ins. Co.*, 533 S.W. 2d 344, 349 (Tex. 1976)). *Accord Haneline v. Walker*, 38,523, p. 3 (La. App. 2 Cir. 1/30/04); 864 So. 2d 263, 265.

[47] Rec. Doc. 30 at 17.

[48] *Id.*

[49] *Id.* (quoting Rec. Doc. 18-5 at 6). *See also* Rec. Doc. 18-6 at 80 ("Professional services do not include services within construction means, methods, techniques, sequences and procedures employed by you in connection with your operations in your capacity as a construction contractor.").

[50] Rec. Doc. 30 at 20.

is not unambiguously excluded."[51]

In the alternative, PCS contends the remaining exclusions do not apply. PCS argues the "work product" exclusions are inapplicable to the property damage here.[52] First, PCS asserts that the "real property" exclusion is inapposite because the damage at issue here is not to real property.[53] Next, PCS argues that the "your work" exclusion applies in the instance of faulty workmanship.[54] PCS contends that it is "absurd" to regard the entire pipeline as PCS's work product, because "[m]odern pipeline construction is a monumental undertaking spanning many miles and involving all manner of professionals and non-professionals working together on a huge variety of component parts."[55] Additionally, PCS asserts that the Starr Suit does not specify "whether some, all, or none" of the pipeline was PCS's "work."[56]

## C.  *Wausau's Arguments in Further Support of Summary Judgment*

In further support, Wausau argues that the duty to defend should be determined based on the services the Starr Suit alleges that PCS provided.[57] According to Wausau, the Starr Suit alleges that the pipeline was damaged because PCS "should have properly reviewed the pipeline's anchoring system."[58] Thus, Wausau submits that the Starr Suit alleges that PCS was rendering

---

[51] *Id.* at 18.

[52] *Id.* at 21.

[53] *Id.* at 21–22.

[54] *Id.* at 23.

[55] *Id.*

[56] *Id.* at 24.

[57] Rec. Doc. 34 at 2.

[58] *Id.*

professional services as the "Owner's Engineer" and not because of PCS's rendering of non-professional services.[59]

Next, Wausau argues that the professional liability exclusion applies where PCS is providing engineering services.[60] According to Wausau, the Starr Suit alleges that PCS was "acting as an engineer."[61]

Wausau further argues the "construction contractor" exception to the professional services exclusion does not apply.[62] Under this exception, professional services do not include construction means and methods employed by PCS in its "capacity as a construction contractor."[63] Wausau asserts that the Starr Suit does not allege that PCS performed construction services.[64] Instead, Wausau contends that the Starr Suit alleges that "PCS should have recommended a different construction method for anchoring the pipeline," not that PCS itself should have used different construction means and methods "as is required for the construction contractor exception to apply."[65]

Wausau next argues that the Starr Suit does not allege "simple negligence arising out of non-professional services" and thus does not remove this case from the professional liability

---

[59] *Id.*

[60] *Id.* at 3.

[61] *Id.* (emphasis omitted).

[62] *Id.* at 4.

[63] *Id.* (quoting Rec. Doc. 18-6 at 80).

[64] *Id.* at 4–5.

[65] *Id.* at 5.

exclusion.[66]  Wausau contends that Fifth Circuit precedent distinguishes between personal injury claims alleging violations of "the general duty of reasonable care" from property damage claims involving "allegations of defective . . . design and construction supervision."[67]  In the latter case, Wausau asserts the professional liability exclusion still applies.[68]

Wausau urges the Court to give a "broad" reading to the "arising out of" language in the professional liability exclusion.[69]  Under a broad reading, Wausau asserts that the Starr Suit "plainly alleges that 'but for' PCS's improper review of the anchoring system, the pipeline would not have moved and been damaged."[70]  Thus, Wausau submits it is "impossible to read the Starr [Suit] as 'arising out of' anything other than PCS's excluded professional services."[71]

Alternatively, Wausau argues that the work product exclusions apply.[72]  Wausau avers that "real property" exclusion has been applied by the Fifth Circuit to wells, and therefore should "apply equally to pipelines."[73]  Finally, Wausau contends that the "your work" exclusion applies because PCS was tasked with overseeing construction of the whole pipeline.[74]

### III. Legal Standard on Summary Judgment

---

[66] *Id.* at 6.

[67] *Id.*

[68] *Id.*

[69] *Id.*

[70] *Id.* at 6–7.

[71] *Id.* at 6.

[72] *Id.* at 9.

[73] *Id.*

[74] *Id.* at 9–10.

Summary judgment is appropriate when the pleadings, the discovery, and any affidavits show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[75] When assessing whether a dispute as to any material fact exists, the court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence."[76] All reasonable inferences are drawn in favor of the nonmoving party, but "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment."[77] If the record, as a whole, "could not lead a rational trier of fact to find for the non-moving party," then no genuine issue of fact exists, and the moving party is entitled to judgment as a matter of law.[78] The nonmoving party may not rest upon the pleadings, but must identify specific facts in the record and articulate the precise manner in which that evidence establishes a genuine issue for trial.[79]

The party seeking summary judgment always bears the initial responsibility of informing the Court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact.[80] Thereafter, the nonmoving party should "identify specific evidence in the record, and articulate" precisely how that evidence

---

[75] Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

[76] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398–99 (5th Cir. 2008).

[77] *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985); *Little*, 37 F.3d at 1075.

[78] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

[79] *See Celotex*, 477 U.S. at 325; *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).

[80] *Celotex*, 477 U.S. at 323.

supports his claims.[81] To withstand a motion for summary judgment, the nonmoving party must show that there is a genuine issue for trial by presenting evidence of specific facts.[82] The nonmovant's burden of demonstrating a genuine issue of material fact is not satisfied merely by creating "some metaphysical doubt as to the material facts," "by conclusory allegations," by "unsubstantiated assertions," or "by only a scintilla of evidence."[83] Rather, a factual dispute precludes a grant of summary judgment only if the evidence is sufficient to permit a reasonable trier of fact to find for the nonmoving party. Hearsay evidence and unsworn documents that cannot be presented in a form that would be admissible in evidence at trial do not qualify as competent opposing evidence.[84]

## IV. Analysis

The sole issue before the Court is whether Wausau is obligated to defend PCS in the Starr Suit. Both parties seek summary judgment. Wausau argues that the Starr Suit presents a professional liability claim, which Wausau contends is excluded under the Policy's professional liability exclusion.[85] PCS argues that the Starr Suit alleges both professional and non-professional liability, and that the Policy's professional liability exclusion does not relieve Wausau of the duty to defend "where the petition alleges both negligent professional services and negligent services

---

[81] *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir.), *cert. denied*, 513 U.S. 871 (1994).

[82] *Bellard v. Gautreaux*, 675 F.3d 454, 460 (5th Cir. 2012) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1996)).

[83] *Little*, 37 F.3d at 1075.

[84] Fed. R. Civ. P. 56(c)(2); *Martin v. John W. Stone Oil Distrib., Inc.*, 819 F.2d 547, 549 (5th Cir. 1987).

[85] Rec. Doc. 18-3 at 2.

of some other nature."[86] Thus, to determine whether Wausau owes a duty to defend, the Court

must decide whether the Starr Suit presents a non-professional liability claim.

### A.     Choice of Law

As a threshold matter, the Court must decide which law to apply to this dispute. A federal

court sitting in diversity "must apply the choice of law rules in the forum state in which the court

sits."[87] Under Article 3515 of the Louisiana Civil Code, "an issue in a case having contacts with

other states is governed by the law of the state whose policies would be most seriously impaired if

its law were not applied to that issue."[88] Louisiana law "generally dictate[s] that the laws of the

state where an insurance policy was issued . . . should govern."[89] Here, the insurance policy was

issued in Louisiana.[90] However, Texas also has a significant relationship to this dispute, because

the Starr Suit was filed in Texas and the damage to the pipeline occurred in Texas. Nevertheless,

the parties agree that there is no conflict between Louisiana and Texas law because both states

apply the eight-corners rule to determine the duty to defend.[91] Accordingly, the Court will apply

Louisiana law because the underlying insurance policy was issued in Louisiana.

### B.     The Duty to Defend

Under Louisiana law, an insurer's duty to defend "is determined by the allegations of the

plaintiff's petition, with the insurer being obligated to furnish a defense unless the petition

---

[86] Rec. Doc. 32 at 4 (quoting *Gore Design Completions, Ltd.*, 538 F.3d at 372).

[87] *Am. Int'l Specialty Lines Ins. Co. v. Canal Indem. Co.*, 352 F.3d 254, 260 (5th Cir. 2003).

[88] La. Civ. Code art. 3515.

[89] *Solstice Oil & Gas I, LLC v. Seneca Ins. Co.*, 655 F. App'x 221, 224 (5th Cir. 2016).

[90] *See, e.g.*, Rec. Doc. 18-3 at 3.

[91] *See id.* at 4; Rec. Doc. 30 at 8.

14

unambiguously excludes coverage."[92] The duty to defend is broader than the duty to provide coverage.[93] "[I]f, assuming all of the allegations of the petition to be true, there would be both coverage under the policy and liability of the insured to the plaintiff, the insurer must defend the insured regardless of the outcome of the suit."[94] Moreover, "[a]n insured's duty to defend arises whenever the pleadings against the insured disclose even a possibility of liability under the policy."[95] The allegations in the petition should be "liberally interpreted in determining whether they set forth grounds which bring the claims within the scope of the insurer's duty to defend."[96] Finally, "[w]hether an insurer has a duty to defend its insured is a question of law."[97]

Courts have found that professional liability exclusions apply even where the insured provides both professional and non-professional services. For example, in *Louisiana Stadium and Exposition District v. BFS Diversified Products, LLC*, the Louisiana Court of Appeal for the Fourth Circuit held that an insurer was not obligated to defend its insured because the policy's professional liability exclusion applied.[98] There, the insured, RoofTech, was hired to consult on the design of

---

[92] *Steptore v. Masco Constr. Co.*, 93-2064, p. 8 (La. 8/18/94); 643 So. 2d 1213, 1218. *See also Mossy Motors Inc. v. Cameras Am.*, 04-0726, p. 6 (La. App. 4 Cir. 3/2/05); 898 So. 2d 602, 606 ("The issue of whether a liability insurer has the duty to defend a civil action against its insured is determined by application of the 'eight-corners rule,' under which an insurer must look to the 'four corners' of the plaintiff's petition and the 'four corners' of its policy to determine whether it owes that duty.").

[93] *Steptore*, 93-2064 at p. 8; 643 So. 2d at 1218.

[94] *Id.*; 643 So. 2d at 1218.

[95] *Id.* at p. 8–9; 643 So. 2d at 1218.

[96] *Am. Home Assur. Co. v. Czarniecki*, 230 So. 2d 253, 269 (La. 1969).

[97] *Lyda Swinerton Builders, Inc. v. Okla. Sur. Co.*, 903 F.3d 435, 445 (5th Cir. 2018) (citing *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 427 (1996)).

[98] 10-0587, p. 6 (La. App. 4 Cir. 9/15/10); 49 So. 3d 49, 53.

the roof of the Superdome.[99]  Notably, RoofTech did not "actually install[]" the roof; instead, it analyzed the design, construction, and installation plans for the roof.[100]  After the roof collapsed because of Hurricane Katrina, RoofTech was sued for negligence.[101]  RoofTech demanded its general liability insurer furnish a defense.[102]

Rooftech and its insurer filed cross-motions for summary judgment on the issue of whether the insurer owed a duty to defend.[103]  The state district court granted summary judgment in favor of the insurer, holding that it "had no duty to defend RoofTech based on the professional services exclusion."[104]  In affirming the state district court, the Louisiana Court of Appeal for the Fourth Circuit explained that RoofTech was "attempt[ing] to cloud the issue by suggesting that not *all* of the services it performed were professional in nature and, therefore, the 'non-professional' services should be covered by the commercial general liability policy."[105]  The court reasoned that the allegations made clear "that RoofTech was hired to serve in a professional service capacity, which logically included monitoring the work and assuring that it was done correctly."[106]

Here, the Court finds that the Starr Suit presents a professional liability claim which is excluded from coverage under the professional services exclusion.[107]  PCS's primary argument is

---

[99]  *Id.* at p. 4; 49 So. 3d at 51.

[100]  *Id.*; 49 So. 3d at 51.

[101]  *Id.*; 49 So. 3d at 51.

[102]  *Id.* at p. 1–2; 49 So. 3d at 50.

[103]  *Id.* at p. 2; 49 So. 3d at 50.

[104]  *Id.* at p. 2–3; 49 So. 4d at 50–51.

[105]  *Id.* at p. 5; 49 So. 3d at 52.

[106]  *Id.* at p. 5; 49 So. 3d at 52.

[107]  Given the Court finds the professional services exclusion applies, the Court need not address the parties'

that the Starr Suit asserts both professional and non-professional liability. But, like RoofTech in *Louisiana Stadium and Exposition District*, PCS "attempts to cloud the issue by suggesting that not *all* of the services it performed were professional in nature, and, therefore, the 'non-professional' services should be covered" by the Policy.[108]

Although PCS did provide professional and non-professional services, PCS's non-professional services are not at issue in the Starr Suit. The policy defines professional services as "approving, or failing to . . . approve . . . opinions, reports, surveys, . . . or drawings and specifications."[109] Professional services also include "[s]upervisory or inspection activities performed as part of any related architectural or engineering activities."[110] The Starr Suit alleges that PCS was hired "to provide oversight into the design and construction" of the Pipeline.[111] According to Starr, "PCS failed to . . . perform a proper consulting review of the design and construction features of the project, which allowed for the pipeline to move, causing great damage to the pipeline and related economic losses."[112] The allegations in the Starr Suit necessarily involve the "inspection" of "engineering activities" that constitute professional services.

Further, the Policy excludes from coverage property damage "arising out of the . . . failure to render any professional services."[113] "Louisiana courts read the words "arising out of"

---

arguments as to the other policy exclusions.

[108] *Louisiana Stadium & Exposition Dist.*, 10-0587 at p. 5; 49 So. 3d at 52.

[109] Rec. Doc. 18-6 at 80.

[110] *Id.*

[111] Rec. Doc. 1-2 at 4.

[112] *Id.* at 5.

[113] Rec. Doc. 18-6 at 80.

expansively, requiring nothing more than 'but for' causation."[114] Here, the Starr Suit alleges that but for PCS's negligent "consulting review of the design and construction features of the project," the pipeline would not have moved and the damage would not have occurred.[115] Even liberally construed, the allegations in the Starr Suit do not present "even a possibility of liability under the policy."[116] It is hard to imagine a scenario where PCS's non-professional services led PCS to negligently review the design and construction features of the pipeline. Therefore, the Court finds that the Starr Suit presents a professional liability claim, which is excluded under the Policy. Given the Court has determined the professional services exclusion applies, the Court need not address the remaining exclusions. Accordingly, Wausau does not owe PCS a duty to defend.

## IV. Conclusion

Since there is no genuine issue of material fact, and the only issue in dispute is whether Wausau owes PCS a duty to defend, which is a matter of law, summary judgment is appropriate.[117] As discussed above, the Court finds that the Starr Suit presents a professional liability claim, which is excluded under the Policy's professional liability exclusion. Therefore, Wausau does not owe PCS a duty to defend. Accordingly,

**IT IS HEREBY ORDERED** that Defendant Employers Insurance Company of Wausau's

---

[114] *Edwards v. Cont'l Cas. Co.*, 841 F.3d 360, 364 (5th Cir. 2016).

[115] Rec. Doc. 1-2 at 5. *See also Elliott v. Cont'l Cas. Co.*, 06-1505, p. 10 (La. 2/22/07); 949 So. 2d 1247, 1253 ("Summary judgment declaring a lack of coverage under an insurance policy may not be rendered unless there is no reasonable interpretation of the policy, when applied to the undisputed material facts shown by the evidence supporting the motion, under which coverage could be afforded." (emphasis omitted)).

[116] *Steptore*, 93-2064 at p. 8; 643 So. 2d at 1218.

[117] *Wisznia Co. v. Gen. Star Indem. Co.*, 759 F.3d 446, 447, 454 (affirming the district court's resolution of whether insurer owed insured a duty to defend, as a matter of law).

Motion for Summary Judgment[118] is **GRANTED**.

      **IT IS FURTHER ORDERED** that Plaintiff Project Consulting Services, Inc.'s Cross-Motion for Summary Judgment[119] is **DENIED**.

      **NEW ORLEANS, LOUISIANA**, this ___13th___ day of August, 2021.

                                           _Nannette Jolivette Brown_
                                           **NANNETTE JOLIVETTE BROWN**
                                           **CHIEF JUDGE**
                                           **UNITED STATES DISTRICT COURT**

---

[118] Rec. Doc. 18.

[119] Rec. Doc. 32.